So this morning, our first case is Agenda No. 7, No. 130337, Rebecca Pata, etc. v. Christie Business Holding Company, PC. Counsel for the appellant, are you prepared to proceed? I am. Good morning, Your Honors. May it please the Court. Good morning, Counsel. My name is Michael Laird, and I am here on behalf of Rebecca Pata. Ms. Pata is a patient of the defendant, Christie Clinic, and she brought this case concerning a data breach that Christie experienced in 2021, and she alleges resulted in the theft of her data and misuse in subsequent fraudulent loan applications. The issue presented by this case generally is when and whether a data breach victim in Illinois has the opportunity to bring a claim against an entity like Christie Clinic, who she contends failed to adequately secure her personal information. These are cases that are largely going forward throughout the country, but because of several questions that are before the Court today, have not really gone forward in Illinois. Those questions include the issue of standing, when and whether a data breach victim has suffered an injury in fact sufficient to bring a case against the defendant, and more specifically, whether or not fraud after a data breach is sufficient injury to establish that concrete injury for standing, but also what claims she may bring against a defendant who does or at least is alleged to have inadequately secured her information. Plaintiff here alleges that defendant had a duty and negligence and that it breached its duty, and that question, whether they had a duty to the plaintiff in this case and in other cases, is also before the Court. And finally, the question of economic loss doctrine. Even if defendant does have a duty, does that doctrine prevent plaintiff from bringing a claim? I'll start with the issue of standing. This is an issue that's been litigated repeatedly in federal court over the past decade. It's an issue of first impression before this Court, but if you look at what the federal courts have done, they've largely, starting at a point of variance, they've largely come to a position where they have general factors and general things that they're looking for in these data breach cases to see if a data breach victim has standing. One of the big questions is whether or not there was fraud after the data breach. Almost all of these courts recognize that when there's fraud after a data breach, that is sufficient for standing. And that's for a couple of reasons. The fraud after the data breach tells us something about what likely happened in the data breach. Generally, in these cases, data breach victims don't really know. We have to rely on what the defendant is willing to tell us. And as other courts have recognized, including the Eleventh Circuit and Ramirez, defendants, for good reason, withhold a lot of information about what happened in the data breach because they don't want a subsequent data breach or they don't want other people to gain information about how their systems operate. So plaintiffs come at these cases at a point of informational disadvantage. But when you have fraud after a data breach, that suggests something about what happened in the data breach itself. Counsel, describe for me what you contend is the fraud after the data breach in this case. Well, I think fraud in this case is the misuse of Ms. Petta's information in the series of fraudulent loan applications that occurred after the data breach but before the defendant had even notified a plaintiff or other patients of the data breach. What ties those loan applications to this specific data breach? I think that's a great question, and it's really probably the key question here. When you have these data breaches, as the Fifth District recognized, and unfortunately I told this to the Fifth District and they put it in their order, the hacker isn't here, or the criminal who commits the fraud is never before the court. So we don't get the opportunity to ask that criminal, where did you get this information that you used in these loan applications? We have to piece together through circumstantial evidence what is the most likely scenario, or at least at this pleading stage, is it reasonable to infer that data came from the data breach? So may I ask, there's been, we're at a pleading stage, of course. And there's been a lot of discussion about what's actually in the complaint, what was actually alleged here when you're talking about fraud. So apparently, I will admit I've not read every word of the complaint, but the appellate court summarizes, or not summarizes, quotes this. Since the data breach, Petta has experienced suspicious behavior in the connection with her phone number and address. Her phone number, city, and state have been used to connect with a loan application at First Financial Bank Columbus, Ohio, in someone else's name. Petta received multiple phone calls in recent months regarding loan applications she did not initiate. And so the question is raised whether that allegation is sufficient to trigger what you're talking about, what happened when there's fraud. Suspicious behavior, a loan application with phone number, city, and state, it's not in her name, and then multiple phone calls. Is that sufficient to plead this idea of fraud? Counsel, I would add to that question the fact that the appellate court referenced the fact that the information allegedly used is readily available using a Google search. How does that impact our analysis? So I think the crux of the question is, is the use of this non-sensitive information that is available online sufficient to say data was taken in a data breach? I think that's a case-by-case inquiry, and in this case, I think it's sufficient for a few reasons. One is, as we allege in the complaint, we know why entities generally target healthcare companies like Princeton Clinic. And that's because the value of the data that healthcare entities have is significant on the dark web. Healthcare entities have medical information, insurance information, social security numbers, all of which can be used for a variety of fraudulent schemes. So we know generally why healthcare entities are targeted. In addition to that, we know the hacker here had access to that information from the defendant's notice. They acknowledged that this hacker was on their system for 30 days, had access to this information, and they can't tell in their investigation how much of that data the hacker took. So already we're at a position where, in my view, there's enough to say that most likely this hacker here is trying to get this data. Now, we don't know what happened, but when you see fraud and misuse of some of the same information that the defendant has admitted was exposed in the data breach, it suggests something about the hacker's motives here. Kagan. Well, let's go back to where we are in terms of pleading questions, because that's a good start, just real basic civil procedure 101 for the students here. Is this language that I just read to you about suspicious behavior, multiple phone calls, the use of her phone number and city and state, is that sufficient to plead what you are considering as perhaps fraud? So there's two responses to that. This is identity theft under Illinois statute. So even if it's not fraud, the use of somebody's phone number and address is identity theft under the statute. But it's not the nature of the data that is, I think, important. It is what is happening with that data and what it suggests about the data breach itself. This person who submitted these loan applications got this data from someone. The close proximity to a data breach where the same information was exposed links these two things, because they're happening close in time. And if you look at how federal. Is there a timeframe pled? It's not pled. It's not pled. So it's not pled. Right. It's not pled. So we can't talk about that. That's not a factor. Close in time is not a factor. It's not in the complaint. I think we can a little bit because the notice so that we filed a complaint, I believe, in April of twenty twenty two. And the data breach occurred in July and August of twenty twenty one. So that's a several month period. Now I can attest to the court. And as I said, it's not specifically stated in the complaint. And that is something that we could amend to add in. It happened in January of twenty twenty two. But again, this is a pleading question. We're just looking at the complaint. This is all we can look at is what's in the complaint. And you agree that that time frame is not pled. I agree that it's not pled, but it can be inferred given the date that we filed the complaint, that it would be within that time frame. And I still think that that time frame would be a sufficiently close point in time for these two things to be reasonably connected. And if you look at how other courts treat this question, the fairly traceability question of whether a fraud is related to a data breach. Generally, there's only two instances in which courts would not presume or at least believe that these two things could have plausibly been connected. That's where there's not a logical connection between the breach and the fraud or there's not the timing doesn't work out right. The logical connection just asks, is the information that was exposed, can it be used for the type of fraud that occurred? Here we have loan applications. And one thing going back to the pleading. We did acknowledge that there were multiple loans taken out. We don't know whether or not her social security number was used. Loans taken out? I'm sorry, loan applications made in her name. And we're using her information. We don't know whether or not her social security number would have been used there. We would need discovery to figure that out. But we do allege that the social security number was impacted by the data breach pursuant to the federal notice. Counsel, what was the plaintiff's injury here? What's the real, distinct, specific injury that she suffered? I think the injury in these cases are the loss of control. No, I'm talking about in this specific case, not in these cases, in this case. I think the injury here among the misuse of her data is the loss of control of her sensitive information. In paragraph 56 of our complaint, we point out that consumers would pay to keep this data safe if they could. They would pay $30 to $50 if they could guarantee their private information would never be accessed or taken by criminals. There is some value, or there's value to a feature of this data. So what is the injury? It's the loss of control of that data. This is private information. We're talking about medical information, social security numbers, insurance information, all impacted by the data breach. Once that is taken out of plaintiff's hands, there's a privacy interest loss there, because this is sensitive information that she wouldn't want to disclose to anyone else, and generally you never disclose your medical information to other people, and also a loss of control of this data. Counsel, when you say there's value attached to the data, isn't that speculative? I don't think so. What's the value of it? The way to measure the value, I think, is through studies like we cited in paragraph 56. If people are willing to pay to keep their data private and within their control, then that is a feature of the data that is lost when the information is breached and put out either on the dark web or put in the hands of cybercriminals. So you can measure the value loss of this data, and I think crudely, courts have recognized that as a potential damages that data breach victims experience. They call it the diminution of the value of the data, and this is something that courts recognize throughout the country. So I think the heart of the injury is the loss of control and privacy of the data, and the misuse of that information is what helps us reasonably infer that plaintiff's data is now in the hands of cybercriminals, in addition to everything we know about the data breach. The fact that this hacker had access to this information for 30 days. Christy likes to point out that they had access to a business email account, but it's a huge red flag in an entity's cybersecurity that a business email account had access to healthcare information, medical information, and social security numbers. That's a huge red flag for cybersecurity, because normally you segregate. If you have people working in business, they don't have access to all of the sensitive information that is located elsewhere, but this one email account had access to everything. That's a big red flag for Christy's cybersecurity. The other big red flag is Christy's investigation of the data breach. These are very technical and highly sophisticated, and normally you can get a good idea of what the hacker did within your system, and you use logging and monitoring to track exactly what the hacker is doing, accessing, and taking out of your system. Christy wasn't able to tell any of that with respect to this hacker. It couldn't figure out exactly what the hacker was taking out of its system or how much data it took out of its system. That's a big red flag for cybersecurity. When you have a situation where we know entities like Christy are being targeted to take this data, you have a hacker who is in the system for 30 days, which is plenty of time to obtain the data, you have access to the data, pursuant to the defendant's own notice about the data breach, and then all of that combined with the fact that we suddenly see misuse soon after the data breach occurring suggests that this data is in the hands of cybercriminals and it's out of plaintiff's control. Counsel, does the letter from Christy state that any data related to your client was actually taken, or did the letter state that it was exposed to these cybercriminals? They said it may have contained that information. But the point there, I think at this stage reasonable inferences are drawn in favor of the plaintiff. The defendant doesn't know what happened at this data breach. It can't figure out why the hacker breached the system, but yet it asks the court to infer that the hacker was there for an independent reason than the valuable data that most hackers are targeting. Defendant doesn't know what the hacker all accessed, yet it's asking the court to infer that it accessed nothing. It doesn't know how much data was taken off the system, yet it asks this court to infer that no data was taken off the system. But we're back to the pleading question. This is what you pled. The 2615-19 motion was filed saying that your client didn't have standing. So at this point, don't you have to somehow find, is it the burden on you now to show all the issues that we're talking about? Where is the fraud and where is the injury? I don't think that's the way courts generally treat it. When you have, these are two unique events. Most people don't experience data breaches that often. Most people don't experience the misuse of their information that often, where people are, they're getting phone calls saying someone's trying to take out a loan using your information, multiple phone calls. So I think at this point you can, through reasonable inferences about what we know about the data breach and what we know about the potential connection between the fraud and the data breach, that it's sufficient to say that the cyber criminal was targeting the information and actually obtained it. And if you look at, this is an issue that's been litigated over and over again. And if you look at the way that other courts have treated it, they presume that these two things are related. The Fred's case versus Southern Independent Bank said, of course, we have two unique events occurring in close proximity that are known to be causally related. It's reasonable to presume here that they're related. If you look at- So counsel, is it your position that you don't have a burden at the pleading stage facing the petition that was filed, the motion that was filed? Of course not. Our burden is to allege facts that we know and are sufficient to draw reasonable inferences about what happened. You're using the word presumption a lot. And so we know that to establish standing that you have to have three things. You have to- the injury has to be distinct and palpable, fairly traceable to defendant's actions, and substantially likely to be prevented or redressed by the grant of the requested relief. Have you shown that in response to this motion? I think we have. As other courts have found, the misuse of data after a data breach is a present injury that victims suffer. This is identity theft under Illinois' statute, and we can fairly trace it to the data breach given what we know occurred in the data breach, given that we know that hackers generally are targeting this information to obtain it, to misuse it for fraud. We point out in the complaint that the value of this data, the reason entities like Christie are generally targeted, is because this data can be used in a wide variety of fraudulent schemes, including financial fraud, which is what was attempted here. In paragraph 55 of our complaint, we explain how that fraud might look. Because of this information, because it's static and can be easily changed by consumers, you can attempt a series of fraudulent loan applications. That is exactly what we're seeing here. So what we would expect, if this data breach occurred as they usually do, a hacker entered the system to take data and either put it on the dark web or use it for fraud themselves, we would expect in that case fraud very similar to what we're seeing here, the misuse of the data. Counsel, I want to ask you to take it off in a different direction. This is a class action, right? Correct. Is the plaintiff alleging that she has standing to represent all members of the class, and if so, why? I think, so the question for standing with respect to a class representative is not whether each individual class member is standing, but whether she has standing. So if she has standing in her own right, then she has standing on behalf of the class. The only time that would not work out is if there's a conflict of interest between her harm and her claims and the classes. And here they are in unison, because you have a class that we allege had their data impacted by this data breach as well, and because she experienced fraud, it makes it more likely that their information was also targeted and taken and put on the dark web or either used by these hackers for fraud. So because of the similarities between the facts, her facts and the class members' facts, they were both impacted by the same data breach, the same data was impacted, and the potential harms, the fact of misuse of their data, that is sufficient for her to represent their interest in a class action. And one other quick question. The plaintiff was offered free credit monitoring, right? Correct. And she declined that? Yes, and most data breach victims do for good reason. You know, this is defendant who breached their data asking them to give them more data and promising them now that we'll take care of your information. So I don't think you can hold it against her that she wouldn't go that route. Instead, she took time to monitor her own account to make sure that information wasn't being misused, and that's something that many data breach victims do. I only have a few minutes left. I can continue to address standing for the court would like, or I can move on to negligence very quickly. And what I'll say about that is what's important about the negligence claim is where the duty arises. Here it arises in the common law under the notion that an entity that takes acts that can create a perceivable risk of harm for somebody else triggers a duty. That duty is to mitigate the risk of harm that it created. That is a well-established common law duty. We are not here proposing an affirmative duty, and I think sometimes that's how defense characterizes it. We're not alleging that every company ever has to protect every piece of data that they have against any data breach or disclosure whatsoever. Counsel, would you bring your remarks to a close? Oh, I'm so sorry. All right. Thank you, Your Honors, and I'll let defense counsel speak. Counsel, please. Madam Chief Justice, and may it please the Court, John Amarillo for Defendant Christie Clinic. I think it's clear from the briefs and the questions that we were just hearing that the parties are talking past each other. So the most immediate question is why? Plaintiff argues that it's because there's disputed factual allegations, but Justice Tice, as your questions, I think, indicated, it's more basic than that. It's about what the complaint actually says, what it alleges, and what it doesn't allege. The complaint says only that a loan application was made using plaintiff's phone number and hometown in someone else's name. I heard my brother counsel say that the loan application was made in plaintiff's name. I think he was misspeaking there. Paragraph 18 of their complaint very clearly says the loan application was made in someone else's name. The complaint doesn't say, importantly, that the loan applications used any of plaintiff's sensitive, personal, protected data, such as their Social Security number. It doesn't say that it used her mailing address. It doesn't say when the applications were made, when plaintiff learned of the applications, whether the applications were successful, whether it negatively impacted her finances, whether it negatively impacted her credit. And, of course, it couldn't because these loan applications were made in someone else's name. It couldn't even theoretically negatively impact her finances and credit. I don't know what that is, but it's not identity fraud. Identity fraud is when you steal someone else's identity. When you use their name in combination with their sensitive, personal information, according to PIPA, to take their identity. Now, I think my brother counsel knows this. So they tried mightily in their briefing to stretch the allegations of their complaint, but they do so far beyond the breaking point. For example, they repeatedly say that the loan applicant used plaintiff's Social Security number. They say that in their opening brief. No. That doesn't appear anywhere in their complaint. And when we caught their hand in the cookie jar on that, in our response brief, and called them out for it, they said in their reply, and then here today, well, it's a reasonable inference that her Social Security number was used. No, it's not. If the person who made out that loan application had plaintiff's Social Security number and they were attempting to commit fraud, they would have used it in combination with her name because that's how you commit identity fraud. That's what identity fraud is. So I don't think the plaintiff is asking you to draw reasonable inferences. He's asking you to make unreasonable assumptions based on allegations that do not appear in the complaint and that actually contradict some of the allegations that are actually in the complaint. When we take the allegations in the complaint as they are, and as true, respecting the procedural posture of the case, the question presented here is pretty straightforward. Whether someone whose sensitive personal information was potentially exposed in a data breach has standing to sue when the only alleged incident of subsequent misuse did not involve their name and did not involve their sensitive information, did not involve private information, only public information was used, and did not involve any protected information. The only information was her phone number and hometown. That's this case as it's actually pleaded. That's all it is. Now the answer to that question has to be no. The plaintiff doesn't have standing. The plaintiff doesn't have standing because PIPA specifically excludes publicly available information from its definition of sensitive protected information. That's Section 5 of the statute. And because if plaintiff has standing in a case like this, then the standing doctrine in data breach cases is absolutely meaningless. Let me ask you about the propriety of the court's investigation. You raised a number of times the idea about what is private, sensitive, the number of terms of information. And here the complaint, as you say, indicates that the bank said that they had a loan application in another name, but this plaintiff's phone number and home address, or not home address, city and state. Okay. The court Googled that. This is, again, I'm really back to civil procedure 101. We're looking at the four corners of the complaint. And your argument is this is public information. Was it appropriate for the court to go beyond the complaint and Google to see if, in fact, this information is public or private? Plaintiff doesn't contest that that information is publicly available. And I think it would be unfair of me to criticize the Fifth District for criticizing them because I asked them to do it during the oral argument. I said you can easily verify this. You can pick up the court can take judicial notice of something. The court can pick up a phone book and look up plaintiff's name. Granted, those are online now. You wouldn't actually physically pick it up, but you know what I mean. There's no question that her phone number and hometown are publicly available information, so I think it is perfectly appropriate for the court to take judicial notice of that, Your Honor. If plaintiff is standing here, then anyone whose personal information is potentially exposed in a data breach will have standing to sue. Regardless of whether they suffered an injury, in fact, much less an injury that could even plausibly be traced back to a specific breach, going to your question, Justice Cunningham. If that's the standard, we need to be really clear about this. Every single Illinois resident, all 12.8, 12.9 million of us, have standing to sue someone now because we've all had our data exposed in the last few years, probably multiple times. Let me give you just one example that happened while we were briefing this case for you. The background check organization National Public Data was breached, reportedly exposing the personal information of billions of people, including the social security numbers of every single American. Do they all have standing? Does the mere fact that the breach happened give them standing? We say no, because without a proper allegation of misuse of sensitive personal information, all we're left with is speculation and fear of future identity fraud. And this court said in Barry, that's not enough for standing. If you don't have an allegation of actual misuse, and we don't here, and that's the nub of the question on standing, all you have is the risk of future misuse. And if that's all you have, this court has said time and time again, that threat needs to be imminent. Now plaintiff says in her brief, she uses the word imminent a lot, she says that her injury is that. But she doesn't plead any facts that would support that conclusion or make it a reasonable inference. In fact, she pleads the exact opposite. She pleads that studies show that 25%, one in every four data breach notification recipients, experience identity fraud. Flip that statistic around. That means three out of four, 75% don't. Can we really call that an imminent threat, if the vast majority of people will never experience identity fraud? I don't think so. Time will tell whether that risk materializes into a distinct and palpable injury, going to your question, Justice Holder-White. But right now, we can't simply assume that it will, and that's what plaintiff is asking you to do. On the traceability question, Justice Cunningham, you were asking about this earlier in my brother counsel's argument. Traceability requires more than pure speculation. The appellate court's point, Justice Tice, about the publicly available information, was that anyone and everyone has access to this. It's out there. It's not protected. That means that there's no set of facts that could possibly be proven, and this was the Fifth District's point, no set of facts that could possibly be proven that would tie the use of her publicly available information to any specific data breach. And to be clear, there is no authority anywhere in the country supporting the proposition that it can be. I'd like to briefly address the duty issue because I think to a certain extent it gets overcomplicated in the briefs. It can be distilled to a really simple question, which is this. Does the court believe that a negligence duty existed in common law before PIPA's 2017 amendment creating a statutory duty to reasonably safeguard sensitive personal information? Now, we say no. We say no because every Illinois court to examine the issue before Flores said no. We say no because every federal court to examine the issue under Illinois law said no, and there I'm referring to decisions like the Seventh Circuit's decision in Trenton where it actually went out of its way to predict that this court wouldn't recognize a common law duty, the Eighth Circuit's decision in Supervalue case, the Central District of Illinois' decision in the Hy-Vee v. Perdue case, even courts as far afield as the Southern District of New York in the Toretto case said no, Illinois doesn't have any such common law duty and it's not likely to be recognized. The legislature also said no. No, there's no common law duty. Representative Williams, this isn't in the briefs and I apologize for that, but it is a matter of public record and it is in the record in the form of the appellate briefs. Representative Williams said during the floor debate in the House on the 2017 amendment creating the statutory duty, he was asked what the purpose of the amendment was, why it was necessary, and he said because there was then nothing in Illinois law requiring data collectors to reasonably care for sensitive personal information. There he was drawing from a long line of Illinois federal court presidents saying that. So no one before the Flores Court thought this was even a possibility. It also just makes sense that there's no common law duty here. If the legislature was simply enhancing already available common law duties, which is what plaintiffs argue, why would it provide a more restrictive remedy via the Consumer Fraud Act? That doesn't make any sense. There's a reason this court is generally very reluctant to go back and retroactively rewrite the common law after the legislature has passed a law relying on Illinois court jurisprudence saying that that area of the common law, that there's nothing there. And I would respectfully submit that this court needs to be really, really careful with this question on duty. Data breaches often involve hundreds of thousands, millions, sometimes billions of people. Creating new duties, expanding remedies when dealing with issues on that scale, that is a public policy question that's best left to the legislature, and that's not just me saying that. This court has said that time and time again. The legislature is in the best position to make those kinds of public policy determinations, especially when dealing with issues expanding civil liability. And this court has been reluctant, I think rightfully, to second-guess those legislative policy determinations and to expand legislative created remedies by judicial decree. Counsel, if we agree with you on standing, do we have to reach this issue of whether or not there's a common law duty for negligence? You don't have to, Your Honor, if you agree with us on standing. If you don't agree with us on standing, then I believe you would be required to. Just to finish out that last point, and then I'll wrap up. This court has said, and I may quote the court, I don't like reading, but it is said that it tries to avoid delving in what it is called judicial metaphysics by saying that the legislature intended to provide a remedy in addition to a common law remedy which existed but has not yet been declared by the courts. The court said that in the Cunningham case. That is exactly what the plaintiffs are asking you to do here, engage in those kinds of judicial metaphysics by rewriting the common law after the fact. The PIPA amendment here is very carefully balanced by the legislature. They deserve some credit. They were balancing the need for victims of identity theft and identity fraud to have recourse against the fact that most of the time, even according to plaintiffs' own allegations, the injury is only speculative. And even then, when there are some, it's only de minimis. And we need to remember that victims of identity theft, they're not left without a remedy here. If they experience actual misuse of their sensitive protected information, they have the Consumer Fraud Act via PIPA's 2017 amendment. If they can show actual damages, which begs the question, why are plaintiffs here so desperate to have their negligence claimed? And I respectfully suggest it's because they know a plaintiff doesn't have any actual damages. If a plaintiff is unsatisfied with that remedy, she can go across the street to the legislature. That's where her redress is. It shouldn't be had in this courtroom. Thank you. Thank you very much, counsel. Counsel to reply. I just want to make one point about duty, and then I want to move back to standing briefly. With respect to duty, I encourage this court to look at Dittman v. UPMC. It's a case out of the Pennsylvania Supreme Court where this exact question was posed to that court whether or not a duty existed in the common law. The court said there that we're not creating a new duty. What we're doing is applying a general negligence standard to the defendant. The duty there is the exact duty that we allege here, which is a duty not to take foreseeable acts that create a foreseeable risk of harm to somebody else. That's a duty this court has recognized in Simpkins, in Brockenberger, and other cases, and this court has said it's a well-established duty. I also encourage this court to look at Valeria. It's a First District case. And what Valeria said, I think, very intelligently is you have to ask where the duty arises from. If it arises in statute only, then there's no common law duty, and you can't bring the common law claims. The statute overrides those. If it arises in the common law, then even though there's a statute that may provide a different claim, there's still a common law claim. This is a common law duty that this court has held as well-established, and just like Dittman held in Pennsylvania, even though its lower courts all agreed with the defendant's position that this seemed like a new duty, the court there said this is not a new duty. It's a traditional duty being applied to a novel circumstance, and I think the court should adopt the same. Moving back to standing, I think the defendant is trying to weaponize an informational disadvantage that a plaintiff has at this point. The defendant says everybody will have standing in a case like this. Every data breach victim, merely by getting a notice, is going to have standing. That's not true. We have here something different. We have, soon after this data breach, information being misused. We acknowledge it's nonsensitive. We acknowledge it would be great if we knew a Social Security number was impacted. We don't know all that information that was used on those fraudulent loan applications, and the bank didn't tell the plaintiff. We don't know everything that happened in the data breach either. We only know what the defendant told us, and there's a lot of things they don't know about what happened in their data breach. But what we do know is we have a target by hackers and a health care entity that is a frequent target, specifically because it has a large volume of very sensitive data that can be used for the exact purpose that we saw after the data breach, which is financial fraud and other fraud like identity theft, medical fraud, or insurance fraud. So exactly what you would expect after a data breach, if the hacker targeted and took the data, is happening here. Where is the insurance fraud and medical fraud? I didn't mean in this case. I mean that's what you would expect from a health entity being targeted and the data being taken. Financial fraud is one of the things that happens even after these health care data breaches because, as the defendant has acknowledged, Social Security numbers being breached can be used to open up these potential loan accounts or to apply for a loan. So we don't know. We don't know at this stage. But what we do know is enough to reasonably infer that there's a connection here. And that's enough to get us in the door and take discovery and figure out whether or not we're right. We have a factual disagreement with the defendants. That's okay. That's going to exist throughout the litigation. They're going to argue their view of the breach. We're going to argue ours. But we have enough here to get in the door and to see whose view is right. Maybe defendants will prevail. Maybe at the end we will. But I think if you brought a reasonable jury here before the court and asked them, what's more likely here? A data breach happens soon after there's a series of fraudulent loan applications coming out using the same data in the data breach. Did that cause the fraud? Or did somebody pick a name out of a phone book that contains millions of names, and it happened to be Rebecca Petto? I think a reasonable jury could find our view is right. And if a reasonable jury could find our view is right, given the facts we already know, then we've alleged enough to reasonably infer that here plaintiff has alleged enough to have stand. And unless the court has any other questions, I'll end my argument there. Thank you so much, counsel. Thanks. This case, Attendant Number 7, Number 130337, Rebecca Petto v. Christie Business Holding Company, will be taken under advisement. Thank you very much for your argument.